**Kenneth R. MAY, Plaintiff,**

v.

**UNITED STATES of America et al., Defendant.**

**No. C–3–79–157.**

United States District Court, S. D. Ohio, W. D.

June 3, 1981.

Charles Johnson, Thomas A. Hansen, Dayton, Ohio, for plaintiff.

James A. Wilson, Patrick J. Hanley, Asst. U. S. Attys., Cincinnati, Ohio, for defendant.

DECISION AND ENTRY ORDERING CONSOLIDATION OF CAPTIONED CAUSE WITH CASE NO. C–3–80–023 (AN ACTION SEEKING FORFEITURE OF PLAINTIFF'S PROPERTY); NO RULING MADE ON MATTERS INCIDENT TO POSSIBLE CRIMINAL PROSECUTION (REQUEST FOR SUPPRESSION OF EVIDENCE, SELF–INCRIMINATION AND FOURTH AMENDMENT DEFENSES); NO RULING MADE ON DEFENDANT'S MOTION TO DISMISS ON JURISDICTIONAL GROUNDS; CONFERENCE CALL SET TO FIX HEARING DATE TO DETERMINE REASONABLENESS IN DUE PROCESS SENSE OF GOVERNMENT'S TWELVE–MONTH DELAY IN COMMENCING FORFEITURE ACTION FOLLOWING SEIZURE OF PROPERTY

## I.  INTRODUCTION

RICE, District Judge.

This matter is before the Court on the Motion of the Defendant, United States of

America, seeking an Order of the Court dismissing the Complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. In the Memorandum attached to its Motion, Defendant has maintained that, as the present suit is in essence being brought against the United States, the action must be barred under principles of sovereign immunity. In addition, Defendant has argued that Plaintiff's assertion of a self-incrimination privilege fails to state a claim because the legal principles upon which that defense is premised have been rendered inapplicable by intervening changes in the law. In response, Plaintiff has filed a Memorandum Contra to Defendant's Motion to Dismiss, in which he has alleged that the Court has jurisdiction under 18 U.S.C. § 3231, because the substance of the within action is in reality criminal. Further, Plaintiff has asserted 28 U.S.C. § 1346(a)(2) as a jurisdictional ground, in light of Defendant's alleged constitutionally unlawful seizure and detention of Plaintiff's property. Plaintiff has also argued that, in any event, a forfeiture action, *United States of America v. One 1977 Chevy Van, et al.*, No. C–3–80–023, which is currently pending in this Court, provides the Court with the ability to dispose of all issues relating to the property in question.

Also pending before the Court at this time, in Case No. C–3–79–157, is Plaintiff Kenneth May's Motion for Return of Property, for suppression of all seized evidence in the event of a forthcoming criminal indictment, and for an Injunction preventing the Government from presenting the seized property as evidence before the Federal Grand Jury. Basically, Plaintiff's position is that his prosecution for violation of the Federal Wagering Tax provisions is forbidden by the Fifth Amendment prohibition of self-incrimination. Additionally, Plaintiff has claimed the same privilege as a defense to any attempt to declare his property forfeit. Finally, Plaintiff has raised, in his Memorandum Contra Defendant's Motion to Dismiss, the argument that his property must be returned because the original seizure and continued retention of the property are constitutionally void.

Before addressing the substantive matters raised by the parties, a few comments would be appropriate in order to clarify the points of analysis which are herein deemed pertinent. Although the Court's research has indicated that subject matter jurisdiction in *May v. United States*, Case No. C–3–79–157, would properly lie under 28 U.S.C. § 1346(a)(2), *States Marine Lines, Inc. v. Shultz*, 498 F.2d 1146 (4th Cir. 1974), a detailed analysis of Defendant's jurisdictional arguments will not be required. Assuming that Defendant is correct in contending that the Court does not have jurisdiction to consider the legality of a seizure, prior to the institution of forfeiture proceedings by the Government, an analysis of the authorities cited by Defendant indicates that the Court does have the ability even in such cases, to determine whether the Government has unreasonably delayed in filing its forfeiture action. *Castleberry v. Alcohol, Tobacco and Firearms Div.*, 530 F.2d 672 (5th Cir. 1976). Moreover, as the Court has determined that the present action should be consolidated with the other related case which is pending (Case No. C–3–80–023, the forfeiture action, *The United States of America v. One 1977 Chevy Van, et al.*), the issue of jurisdiction has been rendered moot, since the Court will be considering the merits of the forfeiture action along with the question of the legality of the seizure raised in *May v. United States of America*, Case No. C–3–79–157. As a further matter, the Court has determined that Plaintiff's property may well have to be returned because the Government's twelve month delay in filing the forfeiture action might constitute a violation of Plaintiff's right to due process before final deprivation of his property. As such a conclusion would dispose of both pending cases, there would be no need to address the self-incrimination defenses presented by Plaintiff.

Finally, as there are no criminal proceedings currently pending against Plaintiff May (no Grand Jury Indictment has been

reported), the Court declines to consider his requests for suppression of evidence and for an injunction against presentation of evidence to the Grand Jury. This decision does not, in any manner, undermine Plaintiff's ability to challenge the use of such evidence in the event of a future criminal prosecution, but rather defers those issues until such time as they may be ripe for disposition. Thus, the issues before the Court are reduced to consideration of: 1) the appropriateness of consolidation, and 2) whether the untimely filing of the Government's forfeiture action may have constituted a deprivation of Plaintiff May's rights under the Due Process Clause of the Fifth Amendment. Having thus refined the matters pertinent to resolution of the within cases, the Court now turns initially to a discussion of the propriety of consolidating *May v. United States of America*, No. C–3–79–157 (the case challenging the legality of the seizure) with *United States of America v. One 1977 Chevy Van, et al.*, No. C–3–80–023 (the forfeiture action).

## II. CONSOLIDATION

Fed.R. of Civ.Pro. 42(a) provides that: When actions involving a common question of law or fact are pending before the Court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning the proceedings therein as may tend to avoid unnecessary costs or delay.

■ Courts which have discussed the issue of consolidation have stressed that the purpose of joining actions is to promote convenience and judicial economy. *Johnson v. Manhattan Railway Co.*, 289 U.S. 479, 496, 53 S.Ct. 721, 727, 77 L.Ed. 1331 (1933); *Katz v. Realty Equities Corp. of New York*, 521 F.2d 1354, 1358 (2d Cir. 1975). Further, the grant of authority given to courts under Fed.R. of Civ.Pro. 42 has been construed liberally and has been interpreted as allocating to a trial court strong managerial powers in matters of consolidation. *In re Air Crash at Florida Everglades on Dec. 29,*

*1972*, 549 F.2d 1006, 1013 (5th Cir. 1977). However, in ruling upon consolidation, "the trial judge should be most cautious not to abuse his judicial discretion and to make sure that the rights of the parties are not prejudiced by the order of consolidation under the facts and circumstances of the particular case." *DuPont v. Southern Pacific Co.*, 366 F.2d 193, 196 (5th Cir. 1966), *cert. denied*, 386 U.S. 958, 87 S.Ct. 1027, 18 L.Ed.2d 106 (1967).

■ An application of the above standards to the circumstances of the present case indicates that consolidation would be appropriate. Initially, the Court notes that both this action and the forfeiture action, *United States of America v. One 1977 Chevy Van, et al.*, No. C–3–80–023, stem from the same set of operative facts, namely, the confiscation of a 1977 Chevy Van and currency belonging to Plaintiff. The seizure, which involved property on the person and from the home of Plaintiff Kenneth May, occurred pursuant to search warrants issued on January 19, 1979, for suspected violations of 26 U.S.C. §§ 4401, 4411, and 4412 (which provide for excise and occupational taxes on wagering, and direct that all persons required to pay such taxes must register with the Internal Revenue Service).

After the property was seized in January, 1979, Plaintiff then instituted the within action on April 4, 1979, requesting that the Court order the return of the property which had been taken. Additionally, as previously noted, Plaintiff urged the suppression of all seized property in any forthcoming criminal indictment, and further asked for an injunction preventing the United States from presenting the seized property as evidence before the Federal Grand Jury. In regard to all matters asserted, Plaintiff claimed the Fifth Amendment prohibition of self-incrimination as a defense. Then, in his Memorandum Contra Defendant's Motion to Dismiss, Plaintiff implicitly alleged violations of the due process clause of the Fifth Amendment, by claiming that his property was being unlawfully withheld. Finally, on January 22, 1980, the United States filed a forfeiture action, *United States v. One 1977 Chevy Van, et al.*, Case No. C–3–80–023, in which

the Government requested that Kenneth May's seized property be declared forfeit. In the Government's Complaint, the allegation was made that the property had been used in furtherance of an illegal wagering operation, and that forfeiture would be proper because May had failed to comply with various provisions of the Internal Revenue Code governing wagering activities.

The preceding discussion illustrates beyond doubt that the factual bases of the two cases under consideration are essentially similar. Consolidating these actions, then, would offer the advantage of avoiding duplicate presentation of evidence. Further, the Court in either action may be required to address the applicability of certain provisions of the Internal Revenue Code, as well as the due process and self-incrimination defenses raised by Plaintiff. Therefore, consolidation would have no effect on the characterization or treatment of the controlling legal issues involved in both actions. For these reasons, consolidation is not considered to be either potentially prejudicial to the interests of any party, or an abuse of discretion on the Court's part. Rather, consolidation of these essentially identical actions will promote the aims of all parties, and economize time and effort without circumscribing the opportunity for full litigation of all relevant claims.

The captioned cause, contesting the legality of the seizure of the Plaintiff's property by government agents on January 19, 1979, will be consolidated with Case No. C–3–80–023, the forfeiture action filed by the government on January 22, 1980,—one year and three days following the seizure of the Plaintiff's property.

### III. APPLICABILITY OF THE DUE PROCESS CLAUSE

■ As noted in the introductory portion of this Opinion, Plaintiff has contended that

his property should be returned because it has been the subject of a constitutionally unlawful detention.[1] As previously indicated, Plaintiff's 1977 Chevrolet Van and approximately twenty seven thousand dollars ($27,000) in currency were confiscated on January 21, 1979 from Plaintiff's home. On April 4, 1979, Plaintiff filed the present action for return of property. Despite that action, however, the government continued to withhold Plaintiff's property, and failed to file its own forfeiture action under 26 U.S.C. § 7302 until January 22, 1980, over one year after the original seizure of Plaintiff's property. Furthermore, the resolution of that forfeiture action has already been delayed for an additional period of time due to the fact that a criminal investigation was still pending. Under the authority of *United States v. U. S. Currency, et al.*, 626 F.2d 11 (6th Cir. 1980) (U. S. Currency), the civil forfeiture action (Case No. C–3–80–023) was stayed for almost three months during 1980 to permit resolution of the related criminal matters. Despite this continuance, and two others requested by the U. S. Attorney and granted on February 11, 1981, and on February 26, 1981, no criminal indictments have been returned against the Plaintiff.

*United States v. Thirty-Seven Photographs*, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971) (Thirty-Seven Photographs), is the earliest significant treatment of delay in a forfeiture context. In that case, customs officials had seized allegedly obscene photographs on October 24, 1969, and the Government had instituted forfeiture proceedings in district court approximately thirteen days later. *Id.* at 366, 91 S.Ct. at 1402. The final decision of the district court, finding 19 U.S.C. § 1305(a) to be unconstitutional, was issued within three

---

1. Plaintiff has presented an additional argument for return of his property, contending that the initial search and seizure was unlawful due to the defective nature of the search warrants issued by the Magistrate. Specifically, Plaintiff has maintained that the warrants are invalid because the supporting affidavits fail to establish probable cause for the search. However, in light of the fact that disposition of this matter may be made under the Due Process claim, the Court does not reach the Fourth Amendment issue, except to note briefly that an examination of the factual data contained in the warrants casts some doubt upon the efficacy of Plaintiff's Fourth Amendment argument.

months of the initial seizure of the property. *Id.* at 366, 91 S.Ct. at 1402. 19 U.S.C. § 1305(a) prohibited the importation of obscene materials into the United States, and authorized customs officials to seize any allegedly obscene items. Although § 1305(a) provided for subsequent judicial proceedings for the forfeiture of the seized property, the statute did not specify that those proceedings should be brought in an expedient manner. *Id.* at 365, n. 1, 91 S.Ct. at 1402, n. 1. The Supreme Court noted that delay did cause constitutional problems, particularly in the First Amendment area, where a failure to act promptly could itself operate as the type of censorship forbidden by the Constitution. *Id.* at 367, 91 S.Ct. at 1403. However, the Court found that the statute in question could be salvaged by the imposition of time limits within which the Government would be obliged to act, once property had been seized. *Id.* at 372, 373, 91 S.Ct. at 1406–1407. Accordingly, the Court held that 19 U.S.C. § 1305(a) must be construed "to require intervals of no more than 14 days from seizure of the goods to the institution of judicial proceedings for their forfeiture and no longer than 60 days from the filing of the action to final decision in the district court." *Id.* at 373–374, 91 S.Ct. at 1406–1407.

In *Sarkisian v. United States,* 472 F.2d 468 (10th Cir. 1972), *cert. denied,* 414 U.S. 976, 94 S.Ct. 291, 38 L.Ed.2d 219 (1973) (Sarkisian), the approach outlined in *Thirty-Seven Photographs* was applied in the context of a forfeiture action involving jewelry rather than materials subject to First Amendment protection. In *Sarkisian,* Customs agents had seized the Plaintiff's jewelry because of alleged fraud in the invoices presented to U. S. Customs. *Id.* at 469. For approximately five months after the seizure, the Government investigated the matter pursuant to the remission procedure authorized by 19 U.S.C. § 1618, *id.* at 469, which permits the Secretary of the Treasury, upon petition of a party, to remit property where he finds that a forfeiture was incurred without willful negligence or intent to violate the law. After the conclu-sion of the remission investigation, the Government waited an additional nine months to file its forfeiture action. *Id.* at 471.

The Court found that the nine month delay between completion of the Government's investigation and the filing of suit impermissibly infringed upon the Plaintiff's Fifth Amendment right to due process. *Id.* at 471. In so ruling, the Court specifically applied *Thirty-Seven Photographs* and stated that:

> The censorship aspects of the *Thirty-Seven Photographs* case, as related to the need for prompt action, does [sic] not distinguish the case as the government here urges. The withholding of Sarkisian's property under the circumstances presents a constitutional claim of no less dignity than that arising from the dirty pictures.

*Id.* at 472. Thus, the Court found that the time within which suit should be brought for fraudulent invoices should not be substantially different than that permitted by the Supreme Court for action after seizure of obscene materials. *Id.* at 472. Although a certain amount of delay was allowed for the remission investigation, the Court found the nine month period which elapsed *after completion* of the administrative process to be unreasonable, and ordered the return of Sarkisian's property. *Id.* at 472.

The constitutional significance of property interests was also stressed in *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1971), (Fuentes), where the Supreme Court, in considering whether due process required a hearing prior to the seizure of property by replevin, stated that:

> The constitutional right to be heard is a basic aspect of the duty of government to follow a fair process of decisionmaking when it acts to deprive a person of his possessions. The purpose of this requirement is not only to ensure abstract fair play to the individual. *Its purpose more particularly is to protect his use and possession of property from arbitrary interference.*

*Id.* at 80–81, 92 S.Ct. at 1994–1995. The Court further stressed in *Fuentes* the "high value, embedded in our constitutional and political history, that we place upon a person's right to enjoy what is his, free of governmental interference." *Id.* at 81, 92 S.Ct. at 1994. (citation omitted). These statements by the Supreme Court emphasize the significance of an individual's property interest, and mandate the conclusion that any process by which those rights are deprived must be fair. Given these assumptions, this Court agrees with *Sarkisian*, 472 F.2d at 472, that the right *herein* involved is of no less "constitutional dignity" than the constitutional claim considered in *Thirty-Seven Photographs.*

In both *Sarkisian* and *Thirty-Seven Photographs*, the Courts found that the forfeiture statutes involved must be *construed* to require prompt action in order that invalidation on constitutional grounds might be averted. *Sarkisian*, 472 F.2d 468, 472 (10th Cir. 1972), *cert. denied*, 414 U.S. 976, 94 S.Ct. 291, 38 L.Ed.2d 219 (1973); *Thirty-Seven Photographs*, 402 U.S. 363, 372, 91 S.Ct. 1400, 1406, 28 L.Ed.2d 822 (1971). This analysis comports with the requirements established in *Fuentes*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1971), *reh. denied*, 409 U.S. 902, 93 S.Ct. 177, 34 L.Ed.2d 165 (1972), for seizures prior to hearing. The Court therein stated that where certain "extraordinary situations" existed, notice and an opportunity to be heard could be postponed until after seizure. *Id.* 407 U.S. at 90, 92 S.Ct. at 1999. Such an interference with property rights was justified because:

> First, in each case, the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a need for very prompt action. Third, the state has kept strict control over its monopoly of legiti-

> mate force: the person initiating the seizure has been a government official responsible for determining under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance.

*Id.* at 91, 92 S.Ct. at 1999.

An analysis of the forfeiture provisions applicable to the present action, which are contained in 26 U.S.C. § 7301 *et seq.*, reveals that they are extremely broad in scope, and do not contain even the limiting language found constitutionally inadequate in *Sarkisian* and *Thirty-Seven Photographs.* Although the Court in *Fuentes* indicated that seizures made pursuant to search warrants would be properly constricted by the Fourth Amendment requirement of probable cause, *id.* at 94, n. 30, 92 S.Ct. at 2001, n. 30, that reasoning does not assist where the primary objection centers upon the government's delay in acting subsequent to a search, rather than upon the propriety of the search itself. This concern with the broad sweep of forfeiture is not a novel judicial concept, *United States v. U. S. Coin and Currency*, 401 U.S. 715, 720–721, 91 S.Ct. 1041, 1044–1045, 28 L.Ed.2d 434 (1971), but fortunately, since an alternate method of disposition is available herein, the Court need not further address the issue of the constitutional sufficiency of 26 U.S.C. § 7302. Such deference is in accordance with the Supreme Court's admonition that a court not "pass on important questions of statutory construction when simpler, and more settled, grounds are available for deciding the case at hand." *Anderson v. United States*, 417 U.S. 211, 218, 94 S.Ct. 2253, 2259, 41 L.Ed.2d 20 (1974).

Accordingly, although lingering doubts remain concerning the constitutional validity of the forfeiture provisions contained in 26 U.S.C. § 7301 *et seq.*,[2] the issue to be now

---

2. The following is a brief description of the Court's opinion concerning the specific inadequacies of the forfeiture provisions referred to above, but is not intended to be considered either as an exhaustive analysis or as a ruling upon that issue, since the Court has already concluded that disposition of this action may

well be appropriate under the alternate ground of impermissible delay.

Assuming that there is a legitimate governmental interest herein in preventing criminal activity, and, that the search warrant used satisfies the *Fuentes* requirement of a narrowly drawn statute, the Court has difficulty with the satisfaction in this case of the other factor

confronted by the Court is whether the twelve month delay occurring between the seizure of Plaintiff's property and the institution of the government's forfeiture action may have constituted a violation of Plaintiff's due process rights under the Fifth Amendment (i. e., whether, in the instant action, the statute was constitutionally applied). As previously indicated, the court in *Sarkisian*, 472 F.2d 468 (10th Cir. 1972), *cert. denied*, 414 U.S. 976, 94 S.Ct. 291, 38 L.Ed.2d 219 (1973) found a delay of nine months to be unreasonable. Although the statutory scheme involved in *Sarkisian* contained certain directives for prompt action, while 26 U.S.C. § 7302 does not, that factor does not mandate that a different result be reached herein. The failure of § 7302 to require expedient processing of forfeiture actions operates, as already indicated, to constitutionally impair the statute rather than to impinge upon Plaintiff's entitlement to due process before final deprivation of his property. Although protections

guaranteed by the Constitution may be curtailed in certain respects for legitimate and pressing governmental reasons, *Fuentes*, 407 U.S. 67, 91, 92 S.Ct. 1983, 1999, 32 L.Ed.2d 556 (1971), as is arguably the situation herein, there must be a point beyond which a further interference with constitutionally shielded rights may not be tolerated, lest an individual's due process rights be affected. *In the present case, it appears that said point may well have been reached, and exceeded.* The Court cannot acquiesce in the derogation of due process rights which would be occasioned by the continued maintenance of the within actions, if no substantial justification can be advanced by the government either to excuse its delay in filing or to support a right to proceed. More repugnant yet, to this Court's mind, is the uncertainty to which Plaintiff has been subjected by the government's tardiness in resolving any potential criminal prosecution stemming from the seizures. Despite the

needed to justify a pre-hearing seizure, that is, the necessity of prompt action to avoid the destruction of evidence. *Fuentes*, 407 U.S. at 93, n. 30, 92 S.Ct. at 2000, n. 30. That urgency appears to be absent where the items seized, like Plaintiff's Chevrolet Van and currency, are neutral objects rather than relevant proofs of the guilt of the party from whom they have been taken. Certainly, the Government could not seriously contend that May's ownership of an automobile is in any sense "evidence" of his alleged illegal conduct; likewise, it is difficult to believe that May would destroy his van in order to conceal criminal activity. Although it is true that an object such as a van *could contain* evidence of unlawful acts, that fact, while justifying seizure of those evidentiary items, would not provide an adequate foundation for the confiscation of other items unconnected to the prohibited behavior.

Moreover, even if the forfeiture scheme under analysis could be validated by the *Fuentes* standards for pre-hearing seizures of property, troubling questions remain with respect to the over-breadth and operation of 26 U.S.C. § 7301 *et seq.* In the forfeiture context, the concept has long been established that:

> [W]henever a statute enacts that upon the commission of a certain act specific property used in or connected with that act shall be forfeited, the forfeiture takes effect immediately upon the commission of the act; the right to the property then vests in the United States, although their title is not perfected until judicial condemnation; *the forfeiture*

> constitutes a statutory transfer of the right to the United States at the time the offense is committed.

*United States v. Stowell*, 133 U.S. 1, 16–17, 10 S.Ct. 244, 247–248, 33 L.Ed. 555 (1890) (emphasis added).

This statutory alteration of the property owner's status could be used to justify the deprivation of his property without strict attention to due process considerations, under the theory that the interest once possessed by the owner had been diminished or eliminated entirely by his illegal conduct and the simultaneous statutory transfer of his right to the property. Although this analysis has not been explicitly identified to validate the operation of the forfeiture statutes, it appears to be implicit, and is the only tentatively logical rationale for permitting the disregard of such a fundamental right as an owner's interest in his property. However, the Court frankly admits that it finds this concept offensive to traditional constitutional values, particularly insofar as a property owner is assumed guilty of some illegal conduct, and penalized in a substantial manner, all before any judicial determination of his culpability.

As a final matter, even if the above objections could be overcome, the forfeiture provisions contained in § 7301 *et seq.*, should be considered defective in their failure to even infer a requirement of prompt institution of forfeiture proceedings. As previously noted, even those statutes held inadequate in the cited cases, contained some type of implicit or explicit exhortation of expediency.

fact that the pertinent criminal statute of limitations has not yet elapsed, the Court views with disfavor any unnecessary delay in the disposition of criminal as well as civil actions. However, as the subject of criminal penalties is not directly presented herein, discussion will be now directed toward those authorities which have compelled the Court to conclude that the government's delay in filing a forfeiture action may have unreasonably interfered with Plaintiff's due process rights.

Courts which have considered the issue of delay in the forfeiture context, have taken various factors into account in determining whether the delay has been unreasonable. In *States Marine Lines, Inc.*, 498 F.2d 1146 (4th Cir. 1973), the court indicated that an appropriate amount of time should be permitted after seizure for investigation. *Id.* at 1155. However, the necessity for investigation is more likely to be required in a seizure made under the customs laws, which allow property to be seized without the prior authorization of a search warrant. 19 U.S.C. §§ 482, 1581. As many customs seizures are likely to be initiated, for example, during inspection of a boat, and without investigation before the fact, there may well be need for additional time for investigation. Even in those circumstances, courts have held delays of as little as six months to be unreasonable. *Boston v. Stephens*, 395 F.Supp. 1000 (S.D.Ohio 1975); *United States v. One (1) Douglas A–26 Aircraft*, 436 F.Supp. 1292 (S.D.Ga.1977) (eleven month delay between seizure of airplane and filing of forfeiture action held unreasonable where customs investigation was completed within one month of seizure.)

Seizures made pursuant to 26 U.S.C. § 7302 may be distinguished from those discussed above, as § 7302 requires that a search warrant be issued *prior* to seizure of property. As a matter of course, it seems likely that a significant amount of investigation will precede application for a search warrant. This observation is borne out by the facts of the present case, where a comprehensive investigation beginning on November 18, 1978 (see complaint in forfeiture action, C–3–80–023, page 3), culminated in

the issuance of search warrants against May's home and person over two months later. Thus, as there is a substantial likelihood of investigation where a search warrant is required before seizure, the argument can be made that *less* time should be allotted for investigative delay in *this* situation than where seizures are made under the customs laws.

Moreover, even assuming that a delay for investigative purposes would be permissible, the Court simply does not accept the premise that an extended period of time was required for preparation of this forfeiture action. In *United States v. One 1975 Mercedes 280 S*, 590 F.2d 196 (6th Cir. 1978), the Sixth Circuit Court of Appeals indicated that in a forfeiture proceeding,

> unlike most civil and criminal proceedings, the burden of proof is on the "accused" owner or possessor, provided that the government first make a preliminary showing of probable cause ...

*Id.* at 199. [Citing *United States v. One Twin Engine Beech Airplane*, 533 F.2d 1106, 1107 (9th Cir. 1976)]. The court further stated that the government was not required to establish a *prima facie* case, but had only to show probable cause for the seizure, which in a forfeiture proceeding "is not a special term of art, but is the same standard employed to test searches and seizures generally." *Id.* 590 F.2d at 199 (citation omitted).

Assuming then, that probable cause existed to support the issuance of search warrants against May, then the same "probable" cause should have sufficed to discharge the government's burden in any subsequent action filed for forfeiture of the property seized. Given the necessity for investigation prior to the government's application for search warrants, the minimal obligation imposed upon the government to establish a *prima facie* forfeiture case, and the identity of standards used to measure probable cause in both of these areas, the Court is unable to find any justification *based upon the present state of the record* for the twelve month delay herein between seizure

and filing. Although the Court does not specify today precise time restraints within which a forfeiture action should be brought, all delays will be carefully scrutinized in the future, particularly where the seizure has been made pursuant to a search warrant. Thus, although the Court agrees that some allowance should be made for investigative delay, the time lapse in the present case would clearly *appear* to be outside any such permissible period.

Another factor which has been advanced in the relevant case law as pertinent to the inquiry of the reasonableness of a delay, is whether the delay was caused by the claimant *or by the owner of the property*. *States Marine Lines, Inc.*, 498 F.2d 1146, 1155 (4th Cir. 1973). This approach was used in *United States v. One 1973 Dodge Van*, 416 F.Supp. 43 (E.D.Mich.1976), where the Court ruled that a six month delay in filing a forfeiture action was not unreasonable because the defendant could not be located in the judicial district. *Id.* at 47. *Accord: Ivers v. United States*, 581 F.2d 1362, 1372 (9th Cir. 1978) (government's failure to file forfeiture promptly caused by reasonable belief that claimant assented to delay). Unlike the property owners in these cases, Plaintiff May has not *apparently* either caused or agreed to any postponement in institution of forfeiture proceedings. To the contrary, the filing of May's action for the return of his property less than three months after its seizure, clearly evidences his intent to hasten the resolution of all questions related to the confiscated items. Despite this expression of impatience by May, the government failed, without *apparent* reason, to file its own action until nine months after the commencement of May's action for the return of his property. Thus, as any delay herein cannot at this point be attributed to Plaintiff, the Court is unable to dismiss the unexcused deferral of filing by the government.

A third factor which has been advanced by the case law to support delay in the forfeiture context is the pendency of administrative proceedings for remission. Where a forfeiture has been incurred under the Internal Revenue laws, 26 U.S.C. § 7327 permits an application for remission to be filed pursuant to the remission procedures outlined in the customs laws. 19 U.S.C. § 1918 provides that the Secretary of the Treasury may remit fines or forfeitures, upon application, if he finds that the penalty was incurred without willful negligence or intent to violate the law. Courts interpreting this provision have disagreed as to whether the processing of petitions may delay the initiation of forfeiture proceedings. *Ivers*, 581 F.2d 1362, 1370 (9th Cir. 1978), but even where deferral has been permitted, the delay has been excused only if "reasonably necessary for the determination of the claims in each particular case." *United States v. One Motor Yacht Named Mercury*, 527 F.2d 1112, 1114 (1st Cir. 1975). This exception, like the others cited above, does not excuse the government's failure to file promptly herein, as Plaintiff May did not institute remission proceedings under 19 U.S.C. § 1918.

The remaining discussion must address those authorities which have considered the due process issue in the context of a forfeiture action brought to enforce violations of the wagering tax laws. In *United States v. One 1978 Cadillac Sedan DeVille*, 490 F.Supp. 725 (S.D.N.Y.1980) (DeVille), the only case found directly on point, four and one-half months had elapsed between the seizure of property and the institution of the government's forfeiture action. *Id.* at 734. The Court analyzed the pertinent authorities and concluded that delay could be considered either "per se unreasonable", or if failing to meet the requirements of that test, could be classified as unreasonable under the circumstances of the individual case. *Id.* at 733. Because the lapse of time did not approximate those found to be "per se unreasonable" (six to twenty-two month delays), *id* at 732, the Court applied the second portion of the above analysis, and found that the delay had not been unreasonable under the facts of the case. *Id.* at 733, 734. In making this latter determination, the Court followed an approach whereby "the need of ... vehicle owners to be free from unreasonable detentions of their vehicles

must be balanced against the cost and inconvenience to the government of providing some means of prompt determination of the legality of the individual detentions." *Id.* at 733 (citations omitted).

Although the Court does not view the analysis required by *DeVille* as being fundamentally different from that previously engaged in herein (with the exception of the categorization of certain delays as per se unreasonable), a brief application of the standards articulated in *DeVille* will be made. Initially, the Court must emphasize its opinion that the twelve month delay in the present case appears to fall well within those found in *DeVille* to be per se unreasonable. Assuming however, that the latter test must be applied, the postponement in filing would appear to be unreasonable under the circumstances of the case at hand. At this juncture, the Court does not intend to engage in a repetitive recitation of factual and legal points previously addressed. The observation should be made, however, that governmental claims of cost and inconvenience are obviated by the fact that most of the preparation required for institution of forfeiture proceedings was, by necessity, completed prior to the government's application for search warrants against Kenneth May. Thus, there appears to be scant governmental inconvenience to outweigh the threatened deprivation to Plaintiff's property interest, particularly in light of this Court's previous determination that such an interest is a significant one. Even if the right asserted by May is only characterized as an interest "in owning and operating a car," *DeVille*, 490 F.Supp. at 733, nothing thus far advanced by the government has justified the abrogation of even that right. Consequently, based on the proceeding discussion, the Court concludes that under either branch of the *DeVille* analysis, the delay of the government in filing the within forfeiture action against May's property would appear to be unreasonable and a violation of Plaintiff's right to due process before final deprivation of his property.

The final point to be considered concerns the possible relevance to this action of a recent Sixth Circuit decision, *U. S. Currency*, 626 F.2d 11 (6th Cir. 1980). Although the issue of due process was not presented to the court in that case, some brief remarks were made concerning due process, and should receive attention herein. *U. S. Currency* involved a forfeiture proceeding brought pursuant to 18 U.S.C. § 1955 for the forfeiture of property used in an illegal gambling business. *Id.* at 12. The main thrust of the court's opinion centered upon the threats of self-incrimination inherent in a forfeiture proceeding.[3] After determining that these dangers could possibly be avoided by a stay in forfeiture proceedings until after the resolution of potential or pending criminal charges, *id.* at 17, the court noted that due process did require "that forfeiture proceedings against seized property be brought without undue delay." *Id.* at 18 (citations omitted). However, the court stated that since the forfeiture proceedings therein had already been initiated, a stay would be appropriate. *Id.* at 18. Additionally, the court advocated that potential adverse effects of a stay could be avoided, for example, by placing funds in an interest-bearing account. *Id.* at 18, n.1.

The above comments by the court in *U. S. Currency*, when considered in conjunction with the twenty-one month delay between seizure and the filing of *that* case, would seem to infer a lesser reasonableness standard than that adopted by this Court. However, such an impression is not accurate, and even if true, would not be dispositive of the legal issues involved in the present actions. Initially, the point should be made that the issue of delay in the *initial* filing of the forfeiture action in *U. S. Currency* was apparently not presented to the Sixth Circuit, as any reference to that contention is conspicuously absent from the Court's opinion. Therefore, any inference to be drawn concerning the Sixth Circuit's due process stance would be based on an

---

3. As noted in the introductory portion of this opinion, similar incrimination claims have been raised by Plaintiff May but need not be considered because of the possible dispositive effect of Plaintiff's due process argument.

issue not directly considered, and would accordingly, be mere speculation. Moreover, when the Court in *U. S. Currency* referred to current case authority on the due process issue, the portions of those citations quoted state only that forfeiture proceedings must be initiated without unreasonable delay. *Id.* at 18; *United States v. Premises Known as 608 Taylor Ave.*, 584 F.2d 1297, 1304 (3d Cir. 1978); *United States v. $40,454 in United States Currency*, 469 F.Supp. 1041, 1043 n. 2 (W.D.Pa.1979). A further point of distinction may be seen in the fact that the court in *U. S. Currency*, 626 F.2d 11 (6th Cir. 1976), distinguished the delay *after* the filing of a forfeiture action from that which is permissible *prior* to the institution of forfeiture proceedings. *Id.* at 18. (Emphasis added). This distinction comports with the analysis of other courts, which have refused to consider delays occurring *after* initiation of suit, as violative of the Due Process Clause. *United States v. One 1973 Buick Riviera Automobile*, 560 F.2d 897, 901, n. 3 (8th Cir. 1977). That approach has also been followed by this Court, which has accorded *no relevance to any delays* occurring after the institution of the government's forfeiture action on January 22, 1980. Although the Court did note, as a prefatory matter, that the government has received various continuances, any such remarks were intended to be introductory only, and no consideration was given to any delay occurring after the institution of the within actions.

The preceding analysis of *U. S. Currency* has illustrated that, while the Sixth Circuit Court of Appeals made several comments concerning delay in the context of forfeiture actions, those statements do not bear directly upon the issues relevant to the present action. For this reason, the Court does not find *U. S. Currency* to be applicable to, or dispositive of, the question of whether the government's delay in filing the within forfeiture action may have constituted a violation of Plaintiff's due process rights under the Fifth Amendment.

## IV. CONCLUSION

In the cases of *May v. United States of America, et al.*, No. C–3–79–157, and *United States of America v. One 1977 Chevy Van, et al.*, No. C–3–80–023, the Court has been presented with several questions. As a threshold matter, the Court has addressed the issue of whether the two actions may be consolidated. Based on the discussion contained in this opinion, the Court has concluded that consolidation would, as a practical matter, operate to conserve the efforts of all parties without posing a threat of prejudice to any party's interest. Therefore, it is ordered that the two actions listed above be consolidated for hearing and trial on all matters at issue in each action.

Additionally, the Court has declined to address Plaintiff's request for suppression of evidence, and his self-incrimination and Fourth Amendment defenses, as those matters are either not ripe for adjudication, or need not be determined due to alternate methods of disposition available to the Court. The same reasoning applies to the subject matter jurisdictional arguments raised by the United States. The Court has accordingly refused to rule on those matters, deeming them moot due to the ordered consolidation of the two causes. Therefore, Defendant's Motion to Dismiss and Plaintiff's Motion for Suppression of Evidence and for an Injunction are not ruled upon at this time.

A final matter raised pertains to Plaintiff's contention that his property should be returned because the government's twelve-month delay in filing its forfeiture action constituted an unlawful deprivation of his property rights. In assessing the sufficiency of this claim, the Court has thoroughly scrutinized the pertinent authority in order to determine whether the delay in this case has been unreasonable, and thus a violation of constitutional requirements under the Due Process Clause of the Fifth Amendment. An application of the *factors* contained in those cases to the *apparently* undisputed facts of the present actions has seemingly indicated that the delay herein has been unreasonable, and that the continued existence of the government's forfei-

**612**

ture action would impermissibly impinge upon Plaintiff's due process rights as guaranteed by the Fifth Amendment.

Throughout this Opinion, this Court has talked in terms of the government's conduct "apparently" constituting (or "may have" constituted) a denial of due process toward the plaintiff-property owner. The use of these words and expressions is mandatory due to the fact that this case is not in a procedural posture whereby this Court can make specific findings of fact as to the reason(s) behind the government's one year and three day delay in filing the forfeiture action after the seizure of the property in question, upon which conclusions of law and findings of fact can be drawn as to whether said delay was unreasonable and, if so, constituted a denial of due process toward the plaintiff-property owner. It is axiomatic that, prior to any such determination being made, the government must be given the opportunity to introduce evidence, either orally from the witness stand or by affidavit, to rebut that which the Court has noted throughout this Opinion appears to be the unreasonable and unconstitutional implementation of an otherwise constitutional statute such as to deprive the plaintiff-property owner of due process under law. Should the government not be able to present evidence satisfying the Court of the reasonableness of this delay in excess of one year between seizure of property and institution of the forfeiture action, the plaintiff's motion for return of his property would be granted and the Court would, therefore, order that the vehicle and money which are the subject of *United States of America v. One 1977 Chevy Van, et al., Case No. C–3–80–023*, namely a 1977 Chevrolet Van, serial number CGL267U118575, and U. S. currency in the amount of Twenty Six Thousand, Three Hundred and Twenty Five Dollars ($26,325.00), be returned forthwith to plaintiff Kenneth R. May.

Counsel listed below will note that a brief conference will be had, by means of conference call telephone communication, at 8:40 a. m. on Friday, June 12, 1981, for the sole purpose of determining procedures to follow in eliciting the necessary factual find-

ings concerning the reasonableness or unreasonableness of delay in institution of the forfeiture action in question. This evidence may be adduced by the government (and, of course, by the plaintiff-property owner, Kenneth R. May) by stipulation of fact, affidavit and/or oral testimony given in open court.