UNITED STATES of America, Plaintiff-Appellee,

v.

EIGHT THOUSAND EIGHT HUNDRED FIFTY DOLLARS ($8,850.00) IN UNITED STATES CURRENCY, Defendant,

Mary Josephine Vasquez, Claimant-Appellant.

No. 78–2066.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 2, 1980.

Decided May 22, 1981.

Rehearing and Rehearing En Banc Denied Aug. 21, 1981.

Paul L. Gabbert, Los Angeles, Cal., for claimant-appellant; Victor Sherman, Los Angeles, Cal., on brief.

Charles W. Kircher, Jr., Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before CHOY and ALARCON, Circuit Judges, and SOLOMON,* District Judge.

CHOY, Circuit Judge:

I. *Introduction*

Claimant Mary Josephine Vasquez (Vasquez) appeals from a judgment forfeiting $8,850 in United States currency which she failed to declare when she entered the United States. We find that the Government unjustifiably delayed institution of forfeiture proceedings in violation of Vasquez's due process right. Accordingly, we reverse the judgment of forfeiture.

* The Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

II. *Facts*

On September 10, 1975, Vasquez flew from Canada to Los Angeles, California. Her customs declaration stated that she was not carrying more than $5,000 in currency and she repeated this statement to a customs inspector. During a pat-down, an inspector found and seized $8,850 that Vasquez had concealed.

On September 25, 1975, Vasquez filed a petition for remission or mitigation of forfeiture. In October 1975, the petition was referred to the Office of Investigation of Customs and its investigation was assigned to Special Agent Janet Pompeo (Pompeo). Pompeo believed a criminal indictment might be warranted and in early November 1975, she opened a criminal file.

On November 13, 1975, Pompeo spoke to Vasquez's attorney, Victor Sherman (Sherman), and attempted to arrange an interview with Vasquez in San Pedro. Sherman requested that he be present at the interview. He said that he was too busy to attend an interview in San Pedro but that he would try to have Vasquez available if Pompeo would come to Los Angeles. An interview was not scheduled at that time.

Pompeo believed that Vasquez might be smuggling narcotics because in 1971 she had been arrested in a narcotics investigation. From November 1975 until April 1976, Pompeo talked with law enforcement agencies to find out whether there was a basis for a smuggling charge against Vasquez. In April 1976, Pompeo concluded that there was no evidence to support such a charge.

In January 1976, Sherman inquired about the status of the $8,850; he said that he understood a determination would be made by January 22, 1976. Shortly thereafter, Sherman was told that the investigation had not been completed and on April 16, 1976, Sherman requested that the petition either be granted or denied as soon as possible.

On May 17, 1976, Pompeo recommended prosecution and on June 15, 1976, Pompeo testified before a grand jury. Vasquez was indicted on the same day. The indictment charged Vasquez with knowingly and willfully making false statements to a United States customs officer in violation of 18 U.S.C. § 1001 and with knowingly transporting $8,850 into the United States without filing a report as required by 31 U.S.C. § 1101(b).

On December 24, 1976, Vasquez was found guilty of knowingly and willfully making false statements to a United States Customs officer [1] but the jury acquitted her on the charge of failing to declare the currency.

On December 28, 1976, Sherman notified Pompeo of the jury's verdicts and he requested that he be notified if there was to be any further delay in passing on the petition. On March 10, 1977, Sherman was notified that the claim of forfeiture had been referred to the United States Attorney's Office and within two weeks the Government filed its forfeiture action. 31 U.S.C. § 1102 and 31 C.F.R. §§ 103.23, 103.-25.

## III. *Discussion*

Vasquez contends that she was denied due process of law because of the Government's 18-month delay before instituting the forfeiture proceeding. We agree.

### A. *The Requirement of Prompt Filing*

■ Forfeiture actions must be brought promptly. See *Ivers v. United States*, 581 F.2d 1362, 1368 (9th Cir. 1978); *United States v. One 1970 Ford Pickup Truck*, 564 F.2d 864 (9th Cir. 1977). Because customs seizures infringe upon the right of private ownership of property, any delay in instituting forfeiture proceedings must be justified. This requirement assures that the citizen will be able to protest an erroneous seizure at a meaningful time. By thus limiting the potentiality for wrongful deprivation we protect property rights to the fullest extent possible, given the competing need to enforce customs laws.

■ In this case, the Government's 18-month delay in filing its forfeiture action was unjustified. The administrative or criminal investigations cannot justify the Government's delay when the necessary elements for a forfeiture were established at the time of the seizure and when, except for one occasion shortly after the seizure, Sherman repeatedly sought to have the claim of his client speedily resolved. The Government does not offer any other justification for delay.

Under the facts of this case we find that the Government failed to institute forfeiture proceedings in a timely manner and that such failure was not justified. *Compare United States v. DiRodio*, 565 F.2d 573 (9th Cir. 1977) (no due process violation where government acted diligently and where claimant's legal maneuvers produced the delay).

### B. *The Elements of a Due Process Claim*

It has been suggested that Vasquez must prove, in addition to the fact of unjustified delay, that she was prejudiced by the 18-month detention of her property. It is further suggested that because currency, as opposed to a wasting asset, was detained in this case, Vasquez was not prejudiced. We find that the non-wasting character of the asset detained is not determinative of whether a due process violation has occurred. The claimant need only show unjustified delay in order to bar a judgment of forfeiture.

Earlier cases can be read to suggest that proof of prejudice is a necessary element of a due process claim. In *Ivers v. United States, supra*, this court upheld a customs forfeiture, despite tardy institution of forfeiture proceedings, because the claimant

---

1. Vasquez's conviction for knowingly and willfully making false statements to United States Customs officials in violation of 18 U.S.C. § 1001 was reversed and remanded because court files were left in the jury room during deliberation. *United States v. Vasquez*, 597 F.2d 192 (9th Cir. 1979).

had concurred in the delay. The court also noted that the claimant offered no showing of prejudice, and that the property detained, cash, was not a wasting asset:

> A more compelling case of prejudicial delay than what has been shown here would have to be demonstrated before we would be willing to deprive the Government of a forfeiture *to which it otherwise has a legitimate entitlement. Id.* at 1373. (Emphasis added.)

In *Ivers*, delay was justified because of the claimant's own contribution to such delay. Similarly, where the claimant seeks alternative administrative relief, the Tenth Circuit has found that the Government is justified in postponing forfeiture proceedings. *See White v. Acree*, 594 F.2d 1385 (10th Cir. 1979). Neither *Ivers* nor *White* holds that prejudice is an element of a due process claim. Any lack of prejudice in those cases arising from the form of the assets involved was not essential to the holdings therein. Therefore the language discussing prejudice is mere dicta.

The absence of prejudice in *Ivers* softened the harsh result of forfeiture. This may explain the inclusion of the prejudice discussion in that case. A careful analysis of the constitutional basis for the promptitude requirement, however, shows that the degree of prejudice arising from the nature of the asset is simply not relevant in determining whether due process rights attach.

Our Constitution provides that property shall not be taken without due process of law. The right to some kind of prompt judicial determination upon deprivation of property is well established. *See, e. g., North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975).

 The constitutional basis for the law on due process claims in customs seizure cases may be stated in brief as follows:

1. Due process requires that procedural safeguards accompany government seizure of private property. *Fuentes v. Shevin*, 407 U.S. 67 [92 S.Ct. 1983, 32 L.Ed.2d 556] (1972).

2. In most cases, due process requires pre-seizure safeguards. *Id.* at 90–92 [92 S.Ct. at 1999–2000].

3. The exigencies involved in customs seizure cases allow a limited exception to the requirement of a pre-seizure hearing. *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663 [94 S.Ct. 2080, 40 L.Ed.2d 452] (1974).

4. The requirements of due process are met in customs seizure cases where the requisite proceedings are initiated promptly. *Ivers v. United States, supra*, at 1368.

5. Any delay in instituting forfeiture proceedings must be justified. *Id.*

To require a further showing of prejudice is inconsistent with this constitutional basis. The guiding principle is that property may not be taken without due process of law. The Supreme Court has made clear that the due process clause makes no distinction between types of property. In discussing the problem of pre-judgment garnishment, the Court has stated:

> It may be that consumers deprived of household appliances will more likely suffer irreparably than corporations deprived of bank accounts, but the probability of irreparable injury in the latter case is sufficiently great so that some procedures are necessary to guard against the risk of initial error. *We are no more inclined now than we have been in the past to distinguish among different kinds of property in applying the Due Process Clause.* (Emphasis added.)

*North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 608, 95 S.Ct. 719, 723 (1975).

The determinative factor in the instant case is that the Government offered no explanation for the delay. This is what distinguishes Vasquez's claim from that of the claimant in *Ivers*. The distinction between wasting and non-wasting assets may make for sympathy in a given case, but it does not change the law. Where property is seized, delay in instituting legal proceedings must be justified.

## IV. Conclusion

A prompt hearing is constitutionally guaranteed to the owner of currency, as it is to the owner of a wasting asset. Once it is shown that the Government has detained property, cash or other, the requirement of a prompt determination attaches. Any delay must be reasonably justified. We find no reasonable justification for delay in this case.

REVERSED.

ALARCON, Circuit Judge, dissenting:

I respectfully dissent.

My colleagues have overruled *Ivers v. United States*, 581 F.2d 1362 (9th Cir. 1978), *sub silentio* without a decent or public burial.

Until today the law of this circuit has been that prejudice is a necessary element of a procedural due process claim based on delay. Just two years ago, this court stated, in summarizing its reasons for affirming a judgment forfeiting currency seized by the government,

> *[f]irst is the apparent absence of any prejudice to Ivers flowing from the challenged delay.* He has not shown any respect in which his defense to forfeiture was impaired by the passage of time. Moreover, the currency seized was not a wasting asset; any value lost by its retention could have been restored by the addition of interest had Ivers prevailed in the forfeiture action. Secondly, Ivers was not barred from initiating judicial action himself, if he so chose. While the duty to institute forfeiture proceedings rests with the Government and may not be shifted to the claimant, his choice not to commence proceedings for restitution of his property provides a further indicium of his "wait-and-see" attitude. Lastly, this court is reluctant to impose a strict obligation on the Government to seek judicial relief immediately, with the increase of litigation and burdens on litigants that would entail, where, as here, the circumstances are equivocal. *A more compelling case of prejudicial delay than what has been shown here would have to*

*be demonstrated before we would be willing to deprive the Government of a forfeiture to which it otherwise has a legitimate entitlement.* Id. at 1373 (emphasis added).

Three years ago, this court at least implicitly recognized that a showing of prejudice is essential to a claim of violation of procedural due process in the following comment: "Because of the fast depreciating nature of an automobile, the Government's claim that no prejudice to the claimant resulted from the untimeliness of the Government's action is clearly without merit." *United States v. One 1970 Ford Pickup Serial No. F10YRG53615*, 564 F.2d 864, 866 (9th Cir. 1977).

Appellant presented no evidence that the delay bringing the forfeiture proceedings to trial in any way interfered with the presentation of her defense in the forfeiture proceedings. Instead we are told in her brief that, "[f]inally, there can be no question that appellant was prejudiced by the government's delay." Appellant proceeds forthrightly to ask that we disapprove of that portion of *Ivers* which holds that currency is not a wasting asset. 581 F.2d at 1373.

The majority states, without citation to any authority, "[b]efore prejudice to the claimant becomes relevant, the government must first show legitimate entitlement and the absence of unreasonable delay." The majority does not explain further its use of the term "legitimate entitlement." However, the reference to legitimate entitlement follows the following quotation from *Ivers*: "A more compelling case of prejudicial delay than what has been shown here would have to be demonstrated before we would be willing to deprive the Government of a forfeiture to which it otherwise has a legitimate entitlement." 581 F.2d at 1373. Put more succinctly, the quoted language simply says that this court will not reverse a judgment of forfeiture based on substantial evidence unless the appellant demonstrates from the record on appeal that the facts show "a compelling case of prejudicial delay."

I respectfully submit that the majority has mistakenly construed *Ivers* as holding that proof of prejudice is not required if the government cannot justify its delay. Neither *Ivers* nor does any other case cited in the opinion of the court so hold.

The law concerning proof of a violation of procedural due process in bringing a matter to trial, most recently recognized in this circuit in *Ivers*, can be summarized as follows:

The person whose property has been seized has the burden of proving:

1. Unreasonable or excessive delay which was not caused by his own conduct or defensive trial tactics.

2. Prejudice resulting from the delay. *See Powell v. United States*, 352 F.2d 705, 707–08 (D.C.Cir.1965). If facts demonstrating both unreasonable delay *and* prejudice are not proved, the trial court should not inquire into the reason for the delay. *See United States v. Feinberg*, 383 F.2d 60 (2nd Cir. 1967), *cert. denied*, 389 U.S. 1044, 88 S.Ct. 788, 19 L.Ed.2d 836 (1968). In *Feinberg*, the court stated "It would be unwise to impose upon the judiciary the inquisitorial function of scrutinizing the internal operations of law enforcement agencies when no possible prejudice to the accused has been shown." *Id.* at 67. If facts establishing unreasonable delay *and* prejudice *are* presented the burden of proof shifts to the government to offer evidence that the delay was for a valid purpose. *United States v. Deloney*, 389 F.2d 324, 325 (7th Cir.), *cert. denied*, 391 U.S. 904, 88 S.Ct. 1652, 20 L.Ed.2d 417 (1968). If the government cannot justify the delay, the aggrieved person prevails. If the government convinces the trial judge that the delay was excusable, the trial court must balance the interest of the government against the prejudice which will be suffered by the person whose property was taken. *See United States v. Marion*, 404 U.S. 307, 324–25, 92 S.Ct. 455, 465–66, 30 L.Ed.2d 468 (1971).

Applying these standards for assessing alleged violation of procedural due process to the matter before us, it is clear that it is our duty to affirm the judgment of the district court. Appellant failed to establish that she was prejudiced in the presentation of her own defense.[1]

The majority, having concluded that prejudice is not an element of due process claim, (ante at 838) proceeds to argue that "[a] prompt hearing is constitutionally guaranteed to the owner of currency, as it is to the owner of a wasting asset." (Ante at 840). No citation is given for this novel proposition. It is in fact directly contrary to the law of this circuit as most recently expressed in *Ivers v. United States*, 581 F.2d at 1373, where this court said, as noted above, "[m]oreover, the currency seized was not a wasting asset; any value lost by its retention could have been restored by the addition of interest had Ivers prevailed in the forfeiture action." In the matter, *sub judice*, had appellant prevailed the court could have awarded interest lost by the retention of the seized currency. The fact is that the money was properly seized from appellant. She suffered no prejudice from the delay to her defense in instituting forfeiture proceedings. The government legitimately was entitled to a judgment of forfeiture. Therefore, appellant was not entitled to the use of the seized currency pending trial of the forfeiture proceedings.

I would AFFIRM the judgment.

---

[1]. I recognize, that except for *Ivers*, the cases I have cited in connection with the burden of proof imposed on a person who claims that a violation of procedural due process has occurred due to governmental delay deal with loss of personal liberty. However, as noted in *United States v. Eight (8) Rhodesian Stone Statues*, 449 F.Supp. 193, 205 (C.D.Cal.1978): "The Supreme Court has said that a violation of property rights may give rise to a due process claim within the same general parameters as a violation of personal rights. *Lynch v. Household Finance Corp.*, 405 U.S. 538, 552, 92 S.Ct. 1113 [1122], 31 L.Ed.2d 424 (1972)." It would be unthinkable to hold, as implied by the majority, that property rights must be given greater protection than personal rights.