Kenneth R. MAY, Plaintiff,

v.

UNITED STATES of America, et al., Defendants.

UNITED STATES of America, Plaintiff,

v.

ONE 1977 CHEVROLET VAN, et al., Defendants.

Nos. C-3-79-157, C-3-80-023.

United States District Court,
S. D. Ohio, W. D.

July 30, 1981.

Thomas A. Hansen, Charles A. Johnson, Dayton, Ohio, for May & Chevrolet Van, et al.

Patrick J. Hanley, Asst. U. S. Atty., Cincinnati, Ohio, Robert J. Fogarty, Asst. U. S. Atty., Dayton, Ohio, for United States.

Opinion Concluding That the Government's Twelve Month and Three Day Delay in Filing Its Forfeiture Action, Following Seizure of Property, Constituted an Unlawful Deprivation of the Property Owner's Rights Without Due Process of Law, in That the Government Has Failed to Demonstrate That the Delay Was Reasonable; Property Seized on January 19, 1979, Ordered to be Returned Forthwith to Property Owner, Kenneth R. May; Judgment to Plaintiff Kenneth R. May and Against Defendant in Case No. C–3–79–157; Judgment to Defendants and Against Plaintiff in Case No. C–3–80–023; Entry of Judgment; Termination Entry

RICE, District Judge.

The captioned cause came on to be heard upon the question of the reasonableness of the Government's one year and three day delay in the filing of a forfeiture action, following the seizure of certain property belonging to Kenneth R. May. For the essential background to this opinion, reference must be had to this Court's Decision and Entry of June 3, 1981, 515 F.Supp. 600, which, *inter alia*, noted that the Government must be given the opportunity to introduce evidence to show the reasonableness of the delay in excess of one year between seizure of property and the initiation of the forfeiture action. The Court indicated that, should the Government not be able to show the reasonableness of the delay, the Court would order the vehicle and money which are the subject of *United States of America vs. One 1977 Chevrolet Van, et al.*, 503 F.Supp. 1027, a 1977 Chevrolet Van and United States currency, returned forthwith to the property owner, Kenneth R. May.

At a hearing held on July 10, 1981, the Government presented, as its sole witness, one William Lyons, the senior attorney with the office of Chief Counsel of the Internal Revenue Service, and, at the time of the operative facts herein, the Staff Assistant to the Regional Counsel for General Legal Services at the Internal Revenue Service Regional Office in Cincinnati, Ohio. His testimony, which was not challenged on cross-examination, revealed the following in support of the Government's claim of reasonableness of the one year and three day delay in initiation of the forfeiture action following the seizure of the property in question, each of which said facts this Court adopts as a finding of fact:

A. *Facts*

1. In early February, 1979, [approximately two weeks after the seizure of the property in question on January 19, 1979], his office received the seized property reports from the Criminal Investigation Division of the Cincinnati Office reference the seizure of the property in question. T–3.

2. In April, 1979, [some two and one-half months after the seizure of the property], a civil action was filed (C–3–79–157) by the property owner, Kenneth R. May, seeking a return of the seized property. These papers were referred to his office for the purpose of the preparation of the necessary legal work needed by the United States Attorney. T–3, 4. By early June, 1979 [some four and one-half months after the seizure of the property], his office had prepared a litigation report which involved a setting forth of the factual and legal information that would assist the United States Attorney in the litigation of Mr. May's suit seeking return of the seized property. T–4. A Motion to Dismiss Mr. May's lawsuit was prepared, as well, in early June, 1979, and was hand-carried, along with the draft copy of the litigation report, to the United States Attorney who was handling the case. At the same time, Mr. Lyons' office transmitted a copy of the litigation report to the National Legal Services Division of the Office of Chief Counsel, in Washington. It is a requirement that all documents prepared

by the Regional Office be sent to the National Office for review, correction and ultimate issuance from that office. Therefore, the copy of the draft report delivered to the United States Attorney's office was to be held until issuance of the final report by the National Office. The official litigation report was issued by the National Office in June, 1979. This litigation report dealt only with Mr. May's suit demanding the return of the seized property. T–4, 5.

3. From May or June, 1979, through September, 1979, a time in which the processing of forfeiture cases by his office was quite new, in that it had not been done before, Mr. Lyons' office was in the process of drafting the necessary documents relating to the seizure of Mr. May's property (the forfeiture suit). These papers included the *initial* draft of the litigation report. The document was prepared primarily through the part-time assistance of a paralegal. The document involved, as did the litigation report on Mr. May's action to recover his property, a complete discussion of all the underlying facts in connection with the search, the execution of a search warrant, the seizure of the property, the nexus between the property's use and the violation of the wagering tax laws, legal cases supporting the use of the property (sic) and the basis of the forfeiture. T–6.

When Mr. May's forfeiture case came into the office, approximately thirty-five other forfeiture cases were then pending, which had come into the office in the early part of the year as a result of increased wagering investigation by the Criminal Investigation Division. T–5.

The para-legals would do a specific phase of all the paperwork on all thirty-five cases at a particular time, before going on to another phase, rather than complete a particular litigation package involving particular property or a particular property owner and then turn around and begin another. In other words, rather than wrap one case up, in its entirety, the Regional Counsel's office would prepare, in effect, thirty-five litigation reports, then prepare thirty-five pleadings, et cetera. T–5, 6.

During that same period of time, Mr. Lyons' office also prepared the Complaint which would be filed seeking the judicial forfeiture of the property, the warrant for the arrest of the property and an order for a warrant of arrest of the property. In all, there were three pleadings, in addition to the litigation report, that had to be prepared to constitute a judicial forfeiture. His office prepared these documents for forwarding to the U.S. Attorney's Office for use in court. T–7.

4. In October, 1979, Mr. Lyons was personally reviewing the documents, ordering changes, et cetera. T–9. By early November, 1979, his office had completed all the necessary paperwork on the May case. T–10.

5. Rather than forward these documents directly to the United States Attorney's Office for filing in court, the Office of the Regional Counsel (in spite of the fact that by that time almost ten months had elapsed since the seizure of the property) was required to forward same to the National Office for pre-review before issuance. T–8, 10.

6. The review was completed by the National Office in late November, 1979. The National Office issued the litigation report and attached documents and sent them to the United States Attorney's Office in early December, 1979. On January 22, 1980, one year and three days after the seizure of the property in question, the forfeiture complaint and other pleadings were filed with this Court (503 F.Supp. 1027). T–10.

7. In connection with Mr. May's lawsuit seeking return of his property, the Office of Regional Counsel received, in October, 1979, a set of interrogatories that Mr. May had served upon the Government. The U.S. Attorney had forwarded these interrogatories to the Office of Regional Counsel, seeking aid and assistance in preparing answers. Special Agents were contacted for necessary information by the Office of Regional Counsel. The proposed answers to interrogatories were returned to the U.S. Attorney's Office in November, 1979, for preparation of the final response to the interrogatories. T–10, 11.

8. During the time in question, the Office of Regional Counsel was short-handed, having only two attorneys, as well as a para-legal(s) to handle close to 100 active cases each month. The attorneys were handling what amounted to a double case load. T–11. During that time, a severe secretarial shortage existed, as only one secretary was available to handle the typing for the entire office. A great backlog of work existed, which had been processed by the attorneys but was stacked up waiting to be typed. T–9.

9. The General Legal Services function is responsible for all administrative type cases coming before the Internal Revenue Service from a five state area; said administrative type cases consisting of representing the agency in EEO cases at the administrative level, representing the agency in adverse action appeals before the Merit Systems Protection Board, representing the agency in litigation arising under the Federal Labor Management Relations Act, by defending the agency in unfair practice cases, et cetera.

### B. *Opinion*

Based upon the foregoing Findings of Fact, this Court concludes that the Government has failed to satisfy its burden of proving that the delay of one year and three days between the seizure of the property and the initiation of the forfeiture action was reasonable.

This Court has no reason to doubt either the integrity or the industriousness of Mr. Lyons and his hard-working office. However, it appears that the Government is hoisted by the petard of its own governmental red tape. What a paradox!! The Government labors so diligently to assure due process, through an elaborate system of checks and balances, reviews and revisions, that it winds up denying due process to its aggrieved citizen through a morass of red tape and seemingly useless procedures that deprives the citizen of his property, and the benefits to be gained through use of that property, without due process of law.

Simply stated, there is absolutely no need to take one year and three days to file the standard garden variety type of forfeiture action that was filed in this case. The Complaint itself, including the prayer and the caption, which together aggregate one page, is only three and a half pages in length. It is, without question, of a boilerplate variety, requiring only the "filling in of the blanks" with such information as the caption, the identity of the property seized, the date of the seizure, the owner of said property, et cetera. There is no need to research the law anew with the filing of each individual complaint. The law in this area is clear; it certainly does not change from the filing of one forfeiture action to another. Any legal research on the subject of forfeiture cases would stand the Internal Revenue Service in good stead from that point on, subject to any revision as changes in the law are announced by courts of competent jurisdiction. Likewise, the other pleadings required in the filing of a forfeiture action can be prepared within a very short period of time. As will be discussed below, there is no need for a litigation report to be prepared prior to the filing of the action.

While this Court has no jurisdiction to advise the Internal Revenue Service as to the manner and means to cut its bureaucratic red tape, it suggests, rather than the present centralized procedure whereby the National Office of the General Counsel must review all papers prepared by Regional Counsel's office subject to their being forwarded to the local United States Attorney for filing, that the process be decentralized. Decentralization would allow the individual United States Attorney's Office to "fill in the blanks", in the preparation of a boilerplate forfeiture complaint and the other necessary documents, within days of the property's seizure. Said complaint could then be filed in a matter of days as opposed to the months it takes under the present system. That such a centralized procedure is efficient and time-saving is obvious. That such a decentralized procedure will provide greater due process to members of the citizenry who

have been deprived of their property, by providing speedier judicial scrutiny of the property's seizure, is likewise not open to dispute. Moreover, there is no need for the Government's elaborate system of review and re-review as presently practiced, since the same standard employed to test searches and seizures generally may be utilized to test probable cause for the seizure leading up to the initiation of a forfeiture proceeding. *United States v. One 1975 Mercedes 280S*, 590 F.2d 196 (6th Cir. 1978). In the instant action, the probable cause necessary to validate the search and seizure of the property, generally, is sufficient probable cause to legitimatize the filing of the forfeiture action. Even in the type of situation wherein the search and seizure proceeds without a search warrant, signed by a neutral Magistrate upon an affidavit alleging probable cause, the "non-search warrant-probable cause" possessed by the seizing law enforcement officer in the field, by virtue of one of the many recognized exceptions to the Fourth Amendment requirement of a search warrant, would be sufficient to allow the Government to file a forfeiture action. The Government's present procedures simply add no additional safeguards to the due process rights of the property owner. Therefore, the litigation report, upon which the Government seems to place so much reliance in the filing of a forfeiture action, is no more necessary a condition precedent to the filing of this type of litigation than would be permission from the property owner himself.

■ The Government has not had the temerity to suggest that the property owner himself occasioned the untoward delay in these proceedings by filing, some two and one-half months after the initial seizure, a lawsuit which, in effect, was a motion seeking a return of the seized property. It is axiomatic that a property owner cannot be penalized for contesting the unconstitutionality of the Government's seizure of his property without due process of law, by means of a filing of a lawsuit some two and one-half months after the seizure.

■ This Court, resisting the almost irresistible urge to legislate which is endemic to trial judges, will not legislate a specific period of delay between the seizure of property and the initiation of a forfeiture action in court which might pass muster as reasonable under the prevailing case law. Each case must, of course, stand and be considered upon its own specific facts. However, this Court will state that in the Southern District of Ohio, Western Division, at Dayton, a delay of one year and three days between the seizure of property and the filing of a lawsuit seeking forfeiture of same is not only unreasonable but *is* totally and wholly unjustified or unexcused by any representation of the type of workload or labyrinthine procedures testified to in this courtroom as justification for the delay. Yeah, verily, *in a given case*, a delay of less than 20% of the delay practiced in this case might be deemed to be unreasonable by this Court's standards.

The delay in question herein deprives the property owner of his property without the due process of law guaranteed all citizens under the Fifth Amendment to the United States Constitution.

For a detailed legal analysis of the relevant case law on the subject of the applicability of delay in the initiation of forfeiture proceedings to the due process clause of the Constitution, see this Court's Decision and Entry of June 3, 1981, at pages 6 through 23.

C. *Conclusions of Law*

1. Pursuant to this Court's Decision and Entry of June 3, 1981, the burden of proof was upon the Government to show that the delay in the initiation of the forfeiture proceeding was reasonable, under all of the facts and circumstances existing in this case.

2. The Government has failed to sustain its burden of proving that the delay was, within the factual confines of this case, reasonable.

3. The Government has deprived the property owner of his property without the due process of law guaranteed him under

the Fifth Amendment to the United States Constitution.

WHEREFORE, based upon the aforesaid, this Court orders that the property that was seized on January 19, 1979, a 1977 Chevrolet Van, Serial No. CGL267U118575, and United States currency in the amount of $26,-325.00, be returned forthwith to the Plaintiff-property owner, Kenneth R. May. Judgment is, accordingly, entered in favor of the Plaintiff, Kenneth R. May, and against the Defendants, in Case No. C–3–79–157 and in favor of the Defendants and against the Plaintiff, United States of America, in 503 F.Supp. 1027.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

Counsel should take note that this Decision is also in the form of a judgment entry. Therefore, the time for prosecuting an appeal to the Sixth Circuit Court of Appeals must be computed from the date upon which this Decision and Entry is filed.