**UNITED STATES of America, Plaintiff,**

v.

**$62,972 IN UNITED STATES CURRENCY, Defendant.**

**UNITED STATES of America, Plaintiff,**

v.

**$25,000 IN UNITED STATES CURRENCY, Defendant.**

**Nos. Civ. LV 81–615 RDF, Civ. LV 81–617 RDF.**

United States District Court, D. Nevada.

May 24, 1982.

Lamond R. Mills, U. S. Atty. by William C. Turner, Asst. U. S. Atty., Las Vegas, Nev., for plaintiff.

Heaton & Wright by Richard A. Wright, Las Vegas, Nev., for defendant.

ORDER GRANTING MOTION FOR RE-
TURN OF SEIZED $62,972 AND MO-
TION FOR RETURN OF SEIZED
$25,000 AND FOR DISMISSAL OF
FORFEITURE COMPLAINT, FILED
FEBRUARY 5, 1982, ON BEHALF OF
CLAIMANT FRED FERRIS

ROGER D. FOLEY, District Judge.

I. *Facts*

The above motions for return of seized property deal with two separate seizures of property admittedly owned by the claimant Fred Ferris. These seizures, made by special agents of the Criminal Investigation Division of the Internal Revenue Service (IRS), took place on November 30, 1980, and December 18, 1980.

The owner of the property allegedly subject to forfeiture in this case is also the subject of a criminal investigation into the alleged illegal wagering activities upon which the forfeitures are based. Recommendations have been made that a criminal prosecution be instituted against the claimant, Fred Ferris. But to date no complaint has been filed nor indictment returned.

On November 30, 1980, pursuant to a federal search warrant, IRS agents searched the residence of claimant Ferris at 1612 South Sixth Street, Las Vegas, Nevada. The agents were searching for wagering paraphernalia and United States currency as alleged evidence of illegal bookmaking in violation of Title 26, United States Code, §§ 7302, 4401, 4411 and 4412. The agents seized documentary evidence and $62,972 in United States currency.

On December 18, 1980, pursuant to a federal search warrant, IRS agents searched the claimant's safe deposit box, No. 1506, at the Dunes Hotel and Country Club in Las Vegas, Nevada. The search was again directed toward wagering paraphernalia and United States currency as alleged evidence of illegal bookmaking in violation of T. 26 U.S.C. §§ 7302, 4401, 4411 and 4412. The agents seized $25,000 in United States currency from the claimant's safe deposit box.

On September 30, 1981, ten months after the seizure of the $62,972 from the residence of the claimant and approximately nine and one-half months after the seizure of the $25,000 from the claimant's safe deposit box, the Government filed a forfeiture complaint regarding the currency. The Government alleges that the currency seized on November 30, 1980, and December 18, 1980, was either being used, or was intended to be used, in violation of the Internal Revenue laws of the United States in that the currency seized was the fruit and instrument of a wagering operation in which neither the claimant nor anyone on his behalf had paid the wagering excise tax imposed by T. 26 U.S.C. § 4401, the professional occupation tax of $500 per year imposed by T. 26 U.S.C. § 4411, nor had given the IRS the information required by T. 26 U.S.C. § 4412. Hence, the Government alleges that the claimant has no property rights in the currency and it becomes forfeited to the United States under the provisions of T. 26 U.S.C. § 7302.

Jurisdiction of this Court is invoked under the provisions of T. 28 U.S.C. §§ 1345 and 1355.

Also on September 30, 1981, the Government in both forfeiture cases filed a Motion to Hold Judicial Forfeiture Proceeding in Abeyance Pending Outcome of Ongoing Criminal Investigation.[1]

On February 5, 1982, counsel for the claimant filed the motions, both for return of the seized monies, $62,972 and $25,000, respectively, and for dismissal of the forfeiture complaint, which are now before this Court.

II. *Discussion*

Claimant charges that the delays between seizure of the property and initiation of forfeiture proceedings, ten months in the case of the $62,972, and nine and one-half months in the case of the $25,000, were

---

1. In October 1981, ex parte orders granting the motions to hold these judicial forfeiture proceedings in abeyance were granted.

unreasonable and deprived the claimant of his property without the due process of law guaranteed him under the Fifth Amendment to the United States Constitution.

■ Forfeiture actions must be brought promptly. *United States v. Eight Thousand Eight Hundred Fifty Dollars*, 645 F.2d 836 (9th Cir. 1981), reh. and reh. en banc denied Aug. 21, 1981. See also *Ivers v. United States*, 581 F.2d 1362, 1368 (9th Cir. 1978); *United States v. One 1970 Ford Pickup Truck*, 564 F.2d 864 (9th Cir. 1977).

"Our Constitution provides that property shall not be taken without due process of law. The right to some kind of prompt judicial determination upon deprivation of property is well established." *Eight Thousand Eight Hundred Fifty Dollars*, supra at 839.

In fact, promptness and immediacy are required in all steps between the seizure and the institution of district court proceedings. *United States v. Eight (8) Rhodesian Stone Statues*, 449 F.Supp. 193, 204 (C.D. Cal.1978).

■ However, speed for the sake of speed alone is not an essential of due process. *United States v. One 1973 Ford LTD*, Ser. No. 3J66S132017, 409 F.Supp. 741 (D.Nev.1976). And, there is no requirement that forfeiture proceedings be commenced within a specific time limit. *United States v. One 1971 BMW 4-Door Sedan*, 652 F.2d 817 (9th Cir. 1981). See also *United States v. One 1972 Mercedes-Benz 250*, 545 F.2d 1233 (9th Cir. 1976).

A forfeiture action is a serious procedure:

"We must not lose sight of the fact that this is a seizure of property, a very drastic, direct, and immediate remedy. Such a seizure is justified on apparently ancient doctrines that the sovereign may seize the instrumentality of a crime in addition to punishing its perpetrator. The instrumentality of a crime is something quite different from what we call contrȧband, such as goods smuggled across a border, or narcotics. Yet, the instrumentality of a crime is treated the same in terms of the sovereign's right to employ summary seizure proceedings." *United States v. One 1971 Opel G. T. Engine No. 77228077, Etc.*, 360 F.Supp. 638, 642 (C.D.Cal.1973).

■ When there is a delay between the seizure and the institution of court proceedings, that delay must be reasonable:

"There is now a chorus of decisions holding that if the delay between the seizure and commencement of district court proceedings is substantial, unexcused and unreasonable, such delay will, on due process grounds, ·itself bar the government from proceeding further." *Eight Rhodesian Statues*, supra at 204.

Whether or not a claimant's due process rights have been infringed depends upon the circumstances of the particular case. *One 1973 Ford LTD*, supra at 742.

In the instant case, while testifying at the March 29, 1982, evidentiary hearing on the question of delay, IRS Special Agent Leon Halper said on cross-examination that part of the reason he saw no need to recommend or expedite forfeiture proceedings was because Halper assumed that because Ferris owed the IRS money for taxes at that time, the IRS was going to have the money seized anyway. Halper also said he wanted to have the documentary material analyzed that had been seized because he was not satisfied an adequate foundation or basis was present to ask for a forfeiture. Halper testified he was "somewhat" knowledgeable regarding the burden of proof to establish forfeiture.

However, the claimant argues that the same probable cause which justified the issuance of the search warrant also would have justified the immediate filing of a forfeiture complaint, which means that a forfeiture complaint could have been filed in the instant case in December 1980.

Cases have held that, "There is no need for the Government's elaborate system of review and re-review as presently practiced, since the same standard employed to test searches and seizures generally may be utilized to test probable cause for the seizure leading up to the initiation of a forfeiture

proceeding." *May v. United States*, 519 F.Supp. 649, 653 (S.D.Ohio, W.D.1981). See also *United States v. One 1975 Mercedes 280S*, 590 F.2d 196 (6th Cir. 1978).

In an earlier opinion in the same case, the *May* Court held that the necessity for investigation is more likely to be required in a seizure made under the customs laws, which allow property to be seized without the prior authorization of a search warrant.

"Even in those circumstances (customs seizures with no prior investigation), courts have held delays of as little as six months to be unreasonable." *May v. United States*, 515 F.Supp. 600, 608 (S.D.Ohio, W.D.1981).

"As a matter of course, it seems likely that a significant amount of investigation will precede application for a search warrant. . . .

"Thus, as there is a substantial likelihood of investigation where a search warrant is required before seizure, the argument can be made that *less* time should be allotted for investigative delay in *this* situation than where seizures are made under the customs laws." 515 F.Supp. at 608. (Emphasis provided)

Halper testified that he waited two months, from November 30, 1980, until early February 1981, before he submitted the documentary material to the FBI. During that time, the material was stored in an IRS safe, Halper said. The material was submitted to the FBI for analysis in early February 1981 by Halper, who had gone to Washington, D. C., on another case. Halper carried the material himself to avoid chain-of-custody problems, he said. The IRS received an FBI report analyzing the materials, dated April 15, 1981. Approximately one month later, in mid-May 1981, Halper submitted a report to IRS Regional Counsel in San Francisco requesting forfeiture of the money. Halper testified it took him about one day to prepare the report.

At the same hearing, IRS Revenue Officer John A. Magliere, Jr., testified that all money owed the IRS by Ferris for unpaid taxes was paid by Ferris on April 29, 1981. Magliere also testified that a notice of federal tax lien was recorded with the Clark County Recorder on November 21, 1980, and that the lien was released on May 6, 1981.

In the Government's Memorandum in Support of Motion to Hold Judicial Forfeiture Proceeding in Abeyance, the Government states that it has been placed in an "unreasonable quandary" because of the situation of parallel civil and criminal proceedings against the claimant.

The Government maintains that although its civil action is ready to be filed sooner than its criminal action, which takes longer to investigate, the Government cannot file the civil action because of constitutional problems which will flow toward the defendant, especially the defendant's Fifth Amendment privilege against self-incrimination. However, the Government charges that by not filing the civil action within a reasonable time, the Government encounters due process challenges on the ground that the delay constitutes a violation of the defendant's constitutional rights.

According to the Government's memorandum, a solution to this problem is provided by *United States v. U. S. Currency*, 626 F.2d 11 (6th Cir. 1980), cert. denied sub nom. *Gregory v. United States*, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 290 (1980), which held that although a claimant should not be compelled to choose between the exercise of his Fifth Amendment privilege against self-incrimination and his property, neither should the Government be compelled to abandon the forfeiture action which Congress, by enacting the statute, obviously intended to create. Supra at 15.

The alternatives to dismissal suggested by the Sixth Circuit are having the claimants prove their claims by the testimony of other witnesses, granting immunity to claimants and staying the forfeiture proceedings until the completion of any criminal prosecutions.

Although this at first may seem a solution to the problem of parallel civil and criminal actions, a closer look at *United States v. U. S. Currency* indicates that its focus was on the protection of parties'

rights *after* forfeiture proceedings have been initiated, not *prior* to the filing of a forfeiture complaint as we see in the instant case.

Indeed, that Court quoted a statement that a forfeiture proceeding must be promptly instituted and "due process requires that forfeiture proceedings against seized property be brought without unreasonable delay," *United States v. $40,454 in U. S. Currency*, 469 F.Supp. 1041 (W.D.Pa. 1979). "The forfeiture proceeding here has, obviously, *already been instituted*, and there seems to be little reason why a stay in that proceeding would not be proper under the circumstances." *United States v. U. S. Currency*, supra at 18 (emphasis added).

In fact, the Court, in *U. S. Currency*, stated that possible hardships claimants may suffer because of lengthy delays should be taken into consideration:

"In balancing the appellees' Fifth Amendment privilege against the desire not to frustrate the congressional intent behind the forfeiture statute, one factor which the court should weigh, particularly in considering the use of a temporary stay, is the possible hardship which appellees may suffer if there is a lengthy delay in the adjudication of the forfeiture proceeding, especially in light of the substantial sums of money involved herein." Supra at 18, n.1.

This Court has not been able to locate, nor have the briefs of the parties cited, any cases which reconcile the interests of protection of the privilege against self-incrimination, as discussed in *U. S. Currency*, and protection of due process rights except for the afore-cited *May v. United States*, 515 F.Supp. 600, 519 F.Supp. 649 (S.D.Ohio, W.D.1981).

In *May*, plaintiff's 1977 Chevrolet van and approximately $27,000 in currency were confiscated on January 21, 1979, from plaintiff's home. The seizure occurred pursuant to search warrants issued for suspected violations of T. 26 U.S.C. §§ 4401, 4411 and 4412 (which provide for excise and occupational taxes on wagering and direct that all persons required to pay such taxes must

register with the IRS), the same sections as in the instant case. On April 4, 1979, the plaintiff filed an action for return of his property. Despite that action, the Government continued to withhold the plaintiff's property and did not file its own forfeiture action until January 22, 1980, more than one year after the seizure of the property. Resolution of the forfeiture action was delayed further due to a pending criminal investigation. Following a court order requiring the Government to introduce evidence of reasonableness, the district court held that the delay of more than one year was not only unreasonable but was totally unjustified and was such as to require return of the property to the owner as amounting to an unlawful deprivation of property without due process.

The *May* Court considered the *U. S. Currency* case and held that it was not applicable to the facts of *May*, which are similar to those of the instant case.

"Initially, the point should be made that the issue of delay in the *initial* filing of the forfeiture action in *U. S. Currency* was apparently not presented to the Sixth Circuit, as any reference to that contention is conspicuously absent from the Court's opinion. Therefore, any inference to be drawn concerning the Sixth Circuit's due process stance would be based on an issue not directly considered, and would accordingly, be mere speculation. Moreover, when the Court in *U. S. Currency* referred to current case authority on the due process issue, the portions of those citations quoted state only that forfeiture proceedings must be initiated without unreasonable delay.
(Citations omitted.)

". . . A further point of distinction may be seen in the fact that the court in *U. S. Currency*, distinguished the delay *after* the filing of a forfeiture action from that which is permissible *prior* to the institution of forfeiture proceedings. (Emphasis added). This distinction comports with the analysis of other courts, which have refused to consider delays occurring *after* initiation of suit, as violative of the

Due Process Clause. *United States v. One 1973 Buick Riviera Automobile*, 560 F.2d 897, 901, n.3 (8th Cir. 1977). That approach has also been followed by this Court, which has accorded no relevance to any delays occurring after the institution of the government's forfeiture action . . . .

"The preceding analysis of *U. S. Currency* has illustrated that, while the Sixth Circuit Court of Appeals made several comments concerning delay in the context of forfeiture actions, those statements do not bear directly upon the issues relevant to the present action. For this reason, the Court does not find *U. S. Currency* to be applicable to, or dispositive of, the question of whether the government's delay in filing the within forfeiture action may have constituted a violation of Plaintiff's due process rights under the Fifth Amendment."

515 F.Supp. at 610–611.

This Court will follow the above analysis and thus holds that the ruling in *United States v. U. S. Currency* is not applicable to the facts of the instant case.

▉ The fact that the property seized in the instant case was currency rather than a wasting asset such as a vehicle, does not help to justify delay on the Government's part in instituting forfeiture proceedings.

In *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 608, 95 S.Ct. 719, 723, 42 L.Ed.2d 751 (1975), the Supreme Court held that it was "no more inclined now than we have been in the past to distinguish among different kinds of property in applying the Due Process Clause."

The Ninth Circuit Court of Appeals discussed the issue in *United States v. Eight Thousand Eight Hundred Fifty Dollars*, supra at 838–840:

"We find that the non-wasting character of the asset detained is not determinative of whether a due process violation has occurred. The claimant need only show unjustified delay in order to bar a judgment of forfeiture.

" . . .

" . . .

"The guiding principle is that property may not be taken without due process of law. The Supreme Court has made clear that the due process clause makes no distinction between types of property . . .

"The distinction between wasting and non-wasting assets may make for sympathy in a given case, but it does not change the law. Where property is seized, delay in instituting legal proceedings must be justified.

"A prompt hearing is constitutionally guaranteed to the owner of currency, as it is to the owner of a wasting asset. Once it is shown that the Government has detained property, cash or other, the requirement of a prompt determination attaches. Any delay must be reasonably justified."

The Ninth Circuit Court of Appeals addressed a charge that proof of prejudice is a necessary element of a due process claim in *Eight Thousand Eight Hundred Fifty Dollars*, supra. Although a petition for certiorari is pending before the Supreme Court in this case, it is still the current law of the Ninth Circuit and it holds that prejudice to the claimant is not needed.

"Neither *Ivers* nor *White* (*Ivers v. United States*, 581 F.2d 1362 [9th Cir. 1978], *White v. Acree*, 594 F.2d 1385 [10th Cir. 1979] ) holds that prejudice is an element of a due process claim. Any lack of prejudice in those cases arising from the form of the assets involved was not essential to the holdings therein. Therefore the language discussing prejudice is mere dicta.

"A careful analysis of the constitutional basis for the promptitude requirement, however, shows that the degree of prejudice arising from the nature of the asset is simply not relevant in determining whether due process rights attach." Supra at 839.

Although in a later case, *United States v. One 1971 BMW 4-Door Sedan*, 652 F.2d 817 (9th Cir. 1981), the Court cited *Ivers*, supra, rather than *Eight Thousand Eight Hundred Fifty Dollars*, supra, in discussing a two and one-half months' lapse between seizure of

property and initiation of forfeiture proceedings, this is not significant because *BMW* did not deal with the issue of whether prejudice is an element of a due process claim.

Indeed, the *BMW* Court held that, "The fact that the property may decline in value while in government custody is, at best, only faintly germane to the issue of reasonableness." Supra at 821–822.

In *United States v. Eight (8) Rhodesian Stone Statues,* 449 F.Supp. 193, 205 (C.D. Cal.1978), the Court described a claimant whose property had been seized:

"In reply, the professor argues that a showing of economic prejudice in terms of a pecuniary loss is not required in order to invoke due process rights. I agree. A showing of economic prejudice, meaning out-of-pocket loss, is, in my view, not a *sine qua non* of a due process violation.

"[The claimant] is deprived of possession and his ownership of the property is questioned and put in jeopardy. Such impairment of property rights might well be called 'economic prejudice' if there is any magic in that terminology. But whether it is called 'economic prejudice' or not, such impairment of property rights, if long enough continued, is in my view a sufficient predicate for the successful invocation of the due process clause."

This Court, in *United States v. One 1973 Ford LTD, Ser. No. 3J66S132017,* 409 F.Supp. 741 (D.Nev.1976, Thompson, J.), has held that where delay has not in any respect prejudiced the arguable rights of the claimant, it cannot be relied upon as a defense. Judge Thompson also appeared to place a burden on the claimant to take affirmative action to regain his property.

However, in *LTD,* the forfeitability of the automobile at the time of seizure was admitted, supra at 743, and the Court, in *Eight (8) Rhodesian Stone Statues,* supra at 206, distinguishes its facts from *LTD* on that basis:

"Although that opinion contains some language which appears to place on the claimant a burden of taking affirmative action, the case seems readily distinguishable on its facts. In that case, the automobile had been seized because it was used for the illegal transportation of marijuana. Apparently, from the beginning, the claimant admitted that it had been used illegally and that it was properly forfeitable."

In fact, the *Statues* Court, supra at 206, held that a claimant "ought not to be required to spend his own money to force the government to take action which the government is bound by law to take and take promptly."

And the point between seizure and initiation of forfeiture proceedings at which the unreasonable delay occurs is not important. "From the standpoint of the claimant, the stage in the procedures at which excessive delay occurs is irrelevant." *United States v. One 1970 Ford Pickup, Ser. No. F10YRG53615, Etc.,* 564 F.2d 864, 866 (9th Cir. 1977).

In *May v. United States,* 519 F.Supp. 649 (S.D.Ohio W.D.1981), after a court-ordered evidentiary hearing on the issue of reasonableness of delay, the Court held that a one-year and three-day delay between seizure and filing of a forfeiture action was unreasonable and the property must be returned to the owner due to an unlawful deprivation of property without due process.

The Court ruled this way despite the fact that evidence established that the two attorneys in the IRS Office of Regional Counsel were both handling double caseloads and a severe secretarial shortage existed which produced a great backlog of work waiting to be typed. Nevertheless, the Court ruled this did not justify the delay:

"This Court has no reason to doubt either the integrity or the industriousness of Mr. Lyons and his hard-working office. However, it appears that the Government is hoisted by the petard of its own governmental red tape. What a paradox!! The Government labors so diligently to assure due process, through an elaborate

system of checks and balances, reviews and revisions, that it winds up denying due process to its aggrieved citizen through a morass of red tape and seemingly useless procedures that deprives the citizen of his property, and the benefits to be gained through use of that property, without due process of law." Supra at 652.

There is no evidence of a shortage of staff personnel or a backlog of work in the instant case. Instead, IRS Special Agent Halper testified he waited for two months, until another case took him to Washington, D. C., before he submitted the seized material to the FBI. He testified that he waited almost another month before completing a one-day report requesting forfeiture of the money. This evidence does not provide justification for the nine and one-half month and ten-month delays.

For the above-stated reasons, this Court finds that the Government delays between seizure of the monies and initiation of forfeiture proceedings were unreasonable and unjustified and the claimant's motions for return of the seized monies and dismissal of the forfeiture complaint must be granted.[2]

The Court acknowledges that the ex parte orders holding forfeiture proceedings in abeyance were improvidently granted and the same are vacated.

---

**2.** In the event the Government brings criminal charges against the claimant, the claimant has agreed to enter into an appropriate evidentiary stipulation or alternative procedure to preserve for the Government the full utilization of the evidentiary value of the seized currency.